1    **WO**

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    Luis Mariano Martinez,              )    No. CV 08-785-PHX-JAT
                                         )
10              Plaintiff,               )    **ORDER**
                                         )
11   vs.                                 )
                                         )
12                                       )
     Dora B. Schriro; et al.,            )
13                                       )
                Defendants.              )
14                                       )
                                         )
15   _____)

16   **I.      Procedural Background**

17          Petitioner was convicted by a jury in Arizona state court.  Petitioner appealed and his

18   conviction was affirmed.  Petitioner filed a first round of post conviction relief ("First PCR").

19   The state appointed counsel for Petitioner.  First PCR counsel did not raise a claim of

20   ineffective assistance of trial counsel.  Under Arizona's framework, First PCR is the time to

21   raise a claim of ineffective assistance of trial counsel.  The First PCR court denied relief.

22          Petitioner then filed a second petition for post conviction relief (Second PCR) arguing

23   that First PCR counsel was ineffective for not raising a claim that trial counsel was

24   ineffective.  The Second PCR court denied relief.

25          Petitioner filed a habeas petition in this Court.  Petitioner argued (among other things)

26   that he was entitled to relief because his trial counsel was ineffective.  This Court held that

27   Petitioner had procedurally defaulted his ineffective-assistance-of-trial-counsel claim and had

28   not shown cause and prejudice to excuse this default which is required for this Court to reach

the merits of that claim.  The Ninth Circuit Court of Appeals affirmed.  The United States Supreme Court reversed holding that the ineffectiveness of First PCR counsel could be cause to excuse procedural default in limited circumstances.  *Martinez v. Ryan*, 132 S.Ct. 1309, 1318 (2012).  Thus, the Supreme Court remanded for this Court to reach the merits of Petitioner's ineffective-assistance-of-trial-counsel claim if those limited circumstances were met.

Following remand, this Court ordered supplemental briefing on the following issues:

1.   Whether counsel in Petitioner's first collateral proceeding was ineffective (Doc. 26-1 at 18).

2.   Whether Petitioner's claim that trial counsel was ineffective is substantial (*id.*).

3.   Whether Petitioner can show prejudice to excuse his procedural default (*id.*).

4.   Assuming Petitioner can show 1-3 above, whether trial counsel was ineffective (Doc. 12 at 26-28).  This briefing should be made as an objection to the Report and Recommendation.  As part of this issue, Petitioner should explain: a) why he claims he is entitled to an evidentiary hearing (Doc. 16 at 7), and b) what specific issues he believes could be proven at an evidentiary hearing.[footnote omitted]  However, Petitioner should not reserve making his merits objections on the assumption that he will receive an evidentiary hearing.  In other words, if the Court determines that an evidentiary hearing is not required, the Court will proceed to rule on the merits without an opportunity for further briefing.

5)   As a matter of law as to how this Court should analyze issues 1 and 4, whether the Anti-Terrorism and Effective Death Penalty Act and other habeas comity protocols require this Court to give deference to an alternative holding of the state court.[footnote omitted]

Doc. 28.

The parties submitted the additional information requested by the Court.  The Court now rules as follows.

## II.   Framework Outlined by the Supreme Court

In this case, the Supreme Court outlined what Petitioner must show for this Court to reach the merits of an unexhausted and procedurally defaulted ineffective-assistance-of-trial-

counsel claim.  First, Petitioner must show that his First PCR counsel was ineffective[1] for not raising the ineffective-assistance-of trial-counsel claim.  *Martinez*, 132 S.Ct. at 1318.  Next, Petitioner must show that the ineffective-assistance-of-trial-counsel claim is substantial.[2]  *Id.* at 1318-19.  If Petitioner can meet these two standards, then Petitioner has established cause to excuse his procedural default.

However, before the Court can reach the merits of a procedurally defaulted claim, in addition to cause, Petitioner must also establish prejudice.  *Id.* at 1316 ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.").  Thus, the third showing Petitioner must make is that he was prejudiced.  *See also Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) ("In applying this standard, *Martinez* made clear that a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, *and* whether there is prejudice.")

Theoretically, the Supreme Court expected the lower courts to consider these three showings in the order presented above.  For example, if First PCR counsel was not ineffective,  this Court should not reach the merits of an unexhausted ineffective-assistance-of-trial-counsel claim.  However, the reality is that this Court must evaluate trial counsel's performance to evaluate any of the three showings Petitioner must make.

For example, taking the first showing, for First PCR counsel to have been ineffective for not raising an ineffective-assistance-of-trial-counsel claim, this Court must determine, under *Strickland*, whether First PCR counsel's conduct fell below an objective standard of reasonableness and whether Petitioner was prejudiced.  *Wiggins v. Smith*, 539 U.S. 510, 521

---

[1]  The standard used here is the one outlined in *Strickland v. Washington*, 466 U.S. 668 (1984).

[2]  The standard used here is the one for issuing a certificate of appealability under *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

1   (2003).  For this Court to determine whether First PCR was deficient for failing to raise an

2   ineffective-assistance-of trial-counsel claim, the Court must evaluate whether there was any

3   reason to raise the claim, which necessarily requires an inquiry into the merits of the claim.

4   Also, the Court must determine whether Petitioner was prejudiced by not raising the claim.

5   For Petitioner to have been prejudiced, the Court must determine that the result of the

6   proceeding would have been different.  *Strickland*, 466 U.S. at 694.  For the result to have

7   been different with respect to the conduct of First PCR counsel, the Court must conclude that

8   the ineffective-assistance-of-trial-counsel claim would have won Petitioner a new trial at the

9   state court level.  Obviously, the Court cannot answer this question without considering the

10  conduct of trial counsel.

11       Next, the Court is to determine whether the ineffective-assistance-of-trial counsel

12  claim is substantial.  Again, for this Court to apply this standard, the Court must look at the

13  substance of the ineffective-assistance-of-trial counsel claim.

14       Finally, the Court must determine whether Petitioner has shown prejudice to

15  overcome his default.  To establish this prejudice, Petitioner must show more than that the

16  errors at his trial constituted a possibility of prejudice; he must show that the errors worked

17  to his actual and substantial disadvantage, infecting his entire trial with errors of

18  constitutional dimension.  *United States v. Frady*, 456 U.S. 152, 170 (1982); *Schneider v.*

19  *McDaniel*, 674 F.3d 1144, 1153 (9th Cir. 2012).  Thus, for the Court to determine if

20  Petitioner was prejudiced sufficient to overcome procedural default, the Court must evaluate

21  whether Petitioner was prejudiced (as defined by *Strickland*) by trial counsel's allegedly

22  deficient performance.

23       As a result, the Court is unable to find a framework where the Court can evaluate the

24  three steps of *Martinez* without deciding whether trial counsel was ineffective.  Thus, the

25  Court will begin with the merits of the ineffective-assistance-of-trial counsel claim and work

26

27

28

backwards through the framework discussed above.[3]   Further, in the event the Court concludes trial counsel was not ineffective, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

## III.    Merits of the Ineffective-Assistance-of-Trial-Counsel Claim

### A.    Factual Background

A jury convicted Petitioner of two counts of sexual conduct with a minor.  Doc. 12 at 1.  The incidents occurred on a single date in 1999.  Doc. 12 at 2.  The victim was Petitioner's wife's daughter, who was eleven years old at the time of the incidents.  Doc. 12 at 2.  The remaining facts will be discussed as necessary for context below.

### B.    Deference to State Court Decision

As discussed above, following Petitioner's conviction he took a direct appeal and had a First PRC proceeding.  Ineffective assistance of trial counsel was not raised in either proceeding.  Petitioner then filed a Second PCR proceeding.

The state trial court found that Petitioner's Second PCR was untimely and that Petitioner had not met an exception to the timeliness requirement.  Doc. 12 at 5-6.  The state trial court also considered the claims on their merits and determined that trial counsel was not deficient and that Petitioner was not prejudiced by any of the alleged deficiencies.  Doc. 12 at 6.  The state trial court made specific findings rejecting Petitioner's arguments.  Doc. 12 at 6.

---

[3]  The Ninth Circuit Court of Appeals used this same approach in *Sexton*, 679 F.3d at 1159.  ("We now look to the record to verify if the ineffective assistance of PCR counsel claim is sufficiently worthy to merit further consideration. To establish that PCR counsel was ineffective, Sexton must show that trial counsel was likewise ineffective, and that PCR counsel's failure to raise trial counsel's ineffectiveness in the PCR proceeding fell below an objective standard of reasonableness. If trial counsel was not ineffective, then Sexton would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel 'was not functioning as the 'counsel' guaranteed' by the Sixth Amendment. *Strickland*, 466 U.S. at 687.")

1    The issue now before this Court is whether this Court should give deference to the

2    state court's holding.  Generally, with respect to any claims that Petitioner exhausted before

3    the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the habeas

4    petition on those claims unless a state court decision is contrary to, or involved an

5    unreasonable application of, clearly established Federal law[4] or was based on an

6    unreasonable determination of the facts.  *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th

7    Cir. 2004).  Further, this Court must presume the correctness of the state court's factual

8    findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d

9    923, 936 (9th Cir. 1998).

10    Here, Respondent argues that this Court should give deference to the state court's

11    finding that trial counsel was not ineffective.  Doc. 31 at 40-44.[5]  Petitioner argues that this

12    Court should not give any deference to the state court's finding on the merits of Petitioner's

13    ineffective-assistance-of-trial-counsel claim because it was an alternative holding (the

14    primary holding being that the Second PCR was dismissed as untimely).  Doc. 10-4 at 32-35.

15    More specifically, Petitioner argues that because the state appellate court affirmed the

16    _____

17    [4] Further, in applying federal law the state courts only need to act in accordance with
Supreme Court case law.  *See* 28 U.S.C. § 2254(d)(1).

18

19    [5] Respondent also argues that *Dickens v. Ryan*, 688 F.3d 1054, 1072 (9th Cir. 2012)
is wrongly decided.  *Dickens* holds, "it appears that the first time the petitioner in *Martinez*

20    argued ineffective assistance of PCR counsel was in his federal habeas petition.  *See
Martinez v. Ryan*, 132 S.Ct. at 1314; *Martinez v. Schriro*, 623 F.3d 731, 734 (9th Cir.2010),

21    *rev'd by Martinez v. Ryan*, 132 S.Ct. 1309.  Notwithstanding, the Supreme Court did not find
the claim barred for not being presented to the state courts.  Therefore, there seems to be no

22    requirement that the claim of ineffective assistance of PCR counsel as cause for a[n]
ineffective-assistance-of-sentencing-counsel claim be presented to the state courts."

23
*Dickens* is mistaken on the facts of *Martinez* because in *Martinez* Petitioner did

24    present his ineffective-assistance-of-first-PCR-counsel claim to the state court arguing it was
cause to overcome the untimeliness of his second PCR petition (which argued that trial

25    counsel was ineffective).  *Martinez v. Schriro*, 2008 WL 5220990, *3 (D. Ariz. 2008)
(holding that ineffective assistance of First PCR counsel was presented/exhausted) (*rev'd on

26    other grounds*, 132 S.Ct. 1309).  Regardless, this Court finds *Dickens* inapplicable to this
case because in this case the state court actually reached the merits of Petitioner's ineffective-

27

28    assistance-of-PCR-counsel-claim. Doc. 10-4 at 32-25.

1   procedural ruling, Petitioner has not been given a full opportunity to litigate the merits ruling;

2   thus, the merits ruling is not entitled to deference.  Doc. 35 at 17-18.

3          There are certain standards this Court should employ in the interests of comity when

4   looking at the various state court decisions.  For example, "When applying these standards,

5   the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson*,

6   360 F.3d at 1055.  Thus, again by way of example, a summary denial of a petitioner's

7   petition for review by the Arizona Court of Appeals renders the trial court's decision on a

8   petitioner's post-conviction relief petition  the "last reasoned decision" of the state court,

9   subject to this Court's review.  *See Y1st v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("later

10  unexplained orders upholding [a] judgment [rejecting a federal claim]" raise a presumption

11  that the reviewing court "looks through" that order to the last reasoned decision).

12         However, also by way of example, the Ninth Circuit of the Court of Appeals has noted

13  the need for a different standard when no rationale was provided for the state court's

14  decision.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223

15  F.3d 976, 981-82 (9th Cir. 2000); *see also Atwood v. Schriro*, 489 F.Supp.2d 982, 1000

16  (D.Ariz. 2007).  When there is no rationale provided by the state court upon which the

17  federal court can rely:

18         [A] federal court independently reviews the record to assess whether the state
           court decision was objectively unreasonable under controlling federal law.
19         *Himes*, 336 F.3d at 853; *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.
           2002).  Although the record is reviewed independently, a federal court
20         nevertheless defers to the state court's ultimate decision.  *Pirtle*, 313 F.3d at
           1167 (citing *Delgado*, 223 F.3d at 981-82); *see also*, *Himes*, 336 F.3d at 853.
21         Only when a state court did not decide the merits of a properly raised claim
           will the claim be reviewed de novo, because in that circumstance "there is no
22         state court decision on [the] issue to which to accord deference."  *Pirtle*, 313
           F.3d at 1167... .
23  *Atwood*, 489 F.Supp.2d at 1000.

24         In summary, the question is whether the Second PCR court's alternative merits

25  holding, which was not addressed by the state appellate court, qualifies as a "last-reasoned

26  decision" that is entitled to deference.  As stated above, Petitioner argues that it does not

27  qualify for deference because the "last-reasoned decision" of the Court of Appeals was based

28

on the procedural ruling.  However, *Pritle* instructs that this Court should consider a claim de novo only when the state court did **not** reach the merits of a **properly** presented claim. 313 F.3d at 1167.  This case is the opposite: the state court **did** reach the merits of an **improperly** presented claim.

Because a rationale was provided for the state court's decision, this Court finds that the state trial court's merits decision on the ineffective-assistance-of-trial-counsel claim is a "last-reasoned decision" which is entitled to AEDPA deference.  A contrary result would undermine the comity on which the AEDPA is premised.  The need for deference is highlighted by the depth of the ruling of the state Second PCR Judge, who was also the trial Judge in Mr. Martinez's case.  The length, detail, and conclusions in the ruling all show sound reasoning by the state court, which should qualify for deference from this Court.  To further illustrate that Petitioner received a reasoned decision in the state court, the Court will quote the trial court's finding on the Second PCR petition:

> 11)   Having noted all of the above, this Court can now summarily dismiss the October 27, 2004 Notice [as untimely].  However, rather than issuing a summary Order of dismissal, this Court will address the two most cogent issues raised by Defendant's Notice dated October 27, 2004 and the Petition filed on February 7, 2005, the Response from the State dated June 29, 2005 and the Defendant's Reply dated July 18, 2005;
>
> 12)   Counsel has filed and this Court received and reviewed over one hundred (100) pages of Pleadings and exhibits, all of which can be reduced to two (2) basic arguments:
>
>> 1)   Trial counsel was incompetent because:
>>
>>> a)   he did not properly prepare for and did not present certain evidence at trial; and
>>>
>>> b)   he did not prevent certain evidence from being admitted during the trial; and
>>
>> 2)   Appellate/Post Conviction Relief counsel was incompetent because she failed to raise the issues noted above;
>
> 13)   This Court presided over the trial and has reviewed the record and now FINDS:
>
>> a)   Counsel's arguments do not raise a colorable claim of ineffective assistance of trial counsel, and, in any event, that claim is precluded;

b)    Counsel's arguments do not raise a colorable claim of ineffective assistance of appellate/Post Conviction Relief [counsel], and, in any event, the claim lacks merit;

c)    Counsel failed to raise the one issue that <u>might</u> have a chance of resulting in review (ie, the 8th amendment issue re: length of the mandatory sentence imposed) even though trial counsel raised the issue at sentencing.

14)   First, this Court will address the issue of trial counsel's preparation and trial work. As indicated above, this Court presided over the trial. This Court, along with the jurors, watched and listened as the victim repeatedly responded, "I don't know," or "I don't remember," to question after question from the State. This Court and the jury heard her recantations on the stand and her "impeachment" by her prior statements. Calling witnesses to testify about her recantation or playing a videotape of her defense interview would have been largely cumulative and was not likely to change the result. <u>ST v. Salazar,</u> 146 Az 540, 707 P.2d 944 (App. 1974); <u>ST v. Valdez,</u> 160 Az 9, 770 P.2d 313 (1989). The jury was free to and did believe the victim's original reports. The Court presumes, as it must, that trial counsel exercised his trial strategy and discretion appropriately. <u>ST v. Shurz,</u> 176 Az 46, 852 P.2d 156 (1993), <u>Strickland v. Washington,</u> 466 US 668, 104 S. CT. 2052, 80L. Ed 2d (1984).

Likewise, this Court cannot find fault with counsel's decision to forego a "battle of experts" on the Child Sexual Abuse Accommodation Syndrome. Counsel effectively cross-examined Ms. Dutton with respect to what motives a child might have to accuse someone of sexual misconduct. This Court cannot find merit in counsel's extended argument that an opposing expert could have made a difference. The real issue is whether Ms. Dutton vouched for the victim's credibility. This Court cannot find that Ms. Dutton did so by stating that the literature "tends to suggest" that recantation is "not uncommon." Nor did she comment on the "truthfulness" of the victim when she responded that "Overwhelmingly, the research suggests that lack of support from the mother of the victim is the most common prompt for recantation." Under the circumstances, this Court is comfortable with the fact that the jury had the opportunity to and did weigh the conflicts in the testimony and after approximately eight (8) hours of deliberation, resolved the conflicts in favor of the State and found unanimously that the evidence proved defendant's guilt beyond a reasonable doubt.

15)   In stating the foregoing, this Court is mindful that Defendant, his family and now present counsel, have assailed trial counsel's performance and have strongly criticized Appellate/Post Conviction Relief Counsel Levitt as well. On the other hand, this Court strongly believes that deference is due to the fact that trial counsel had very limited options available to him to deal with the issue of semen on the victim's nightgown. He did a credible job suggesting the victim's mother wore the nightgown or that the semen got on the nightgown when the victim climbed into her mom's bed or when she changed clothes in the bathroom.

16)   Even were this Court inclined to do so, this Court cannot find that if trial counsel had done everything suggested by counsel in this Post Conviction Relief, the result would have changed.

17)   Based on the foregoing, the Court cannot find that original appellate/PCR counsel's performance fell below the standards set forth in <u>Strickland</u>, <u>Salazar</u>, <u>Valdez</u>, supra.

Therefore, the Court having found that none of the issues raised by counsel present a colorable claim, counsel's request for an evidentiary hearing is DENIED.

Doc. 10-4 at 33-35.

Petitioner makes no showing that the rulings of the state court were contrary to or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d). Further, Petitioner makes no showing that the state court unreasonably applied the facts. *Id.* Thus, because Petitioner failed to show that the state court's decision ran afoul of 28 U.S.C. § 2254(d), the Petition must be denied. Specifically, this Court will not overturn the state court's finding that neither trial counsel nor First PCR counsel were ineffective under *Strickland*.

### C.   Request for Evidentiary Hearing

The Court notes that Petitioner has requested an evidentiary hearing. Based on the ruling above, the Court need not conduct an evidentiary hearing because Petitioner is not entitled to relief. To expedite this case, however, in the event a reviewing court disagrees that the Second PCR decision is a "last-reasoned decision," the Court will consider Petitioner's ineffective-assistance-of-trial-counsel claim on the merits.

Prior to the Supreme Court's decision in *Martinez*, to qualify for an evidentiary hearing in federal court, a petitioner had to: "(1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." *Belmontes v. Brown*, 414 F.3d 1094, 1124 (9th Cir. 2005) (*rev'd on other grounds Ayers v. Belmontes*, 549 U.S. 7 (2006)); *see also West v. Ryan*, 608 F.3d 477, 485 (9th Cir. 2010). A petitioner was also required to show that he exercised reasonable diligence in developing the factual record in the state proceedings. *West*, 608 F.3d at 485.

It is not clear following *Martinez* that Petitioner must show that he did not receive a hearing in state court, nor that he excised diligence in developing a record in state court. In this case, however, Petitioner did develop a record in state court (however, the record may not have been developed diligently as it was untimely). To the extent these two requirements still exist, the Court finds Petitioner satisfied them in this case.

Focusing on the first prong of *Belmontes*, however, no hearing is necessary if this Court "is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial . . . ." *United States v. Navarro-Garcia*, 926 F.2d 818, 822 (9th Cir. 1991); *West*, 608 F.3d at 485 ("If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.") (internal quotations omitted). Thus, this Court need not conduct an evidentiary hearing if, even presuming Petitioner's allegations as true, he would not be entitled to relief. For purposes of the alternative merits discussion below, the Court will presume Petitioner's allegations as true.

Additionally, in this case, the facts are not actually in dispute; thus, there is nothing for this Court to "find" following an evidentiary hearing. Instead, what Petitioner argues is that the undisputed facts regarding various actions counsel took at trial fell below an objective standard of reasonableness and prejudiced Petitioner. The Court does not require an evidentiary hearing to apply the law of *Strickland* to undisputed facts.

Finally, the Court notes that Respondent has advised that Petitioner's trial counsel is deceased. Doc. 31 at 14 n. 9. Thus, any evidentiary hearing could not possibly illuminate his strategic decisions, entitling such decisions to a presumption of reasonableness under *Strickland*. *See Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005).

**D.   Merits of Claim**

As discussed above, to establish ineffective assistance of counsel, Petitioner must show that his trial counsel's performance was deficient, and that the deficiency prejudiced him. To establish deficient performance, Petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. *Wiggins*, 539 U.S. at 521.

A deficient performance is one that is "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  In order to show prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

By the Court's count, Petitioner has eight theories of ineffective assistance of counsel, some of which have sub-parts.  The Court will consider each theory in turn.

### 1. Admission of State's Expert Testimony

Petitioner argues that his counsel was ineffective because he did not object to the state's expert, Dutton, under *State v. Lindsey*, 720 P.2d 73 (Ariz. 1986).  *Lindsey* held that an expert cannot opine as to the victim's truthfulness by suggesting what percentage of victims are truthful.  *Id*. at 77.  Here, Petitioner argues that the expert testifying that the research overwhelmingly suggests that lack of support from the mother is the most common reason for recantation, rose to the level of opining on truthfulness.  Doc. 35 at 10.

First, the Court agrees with Respondent that this particular testimony by the expert did not rise to the level of the expert giving an opinion on this particular victim's truthfulness.  Thus, the trial counsel was not ineffective for not raising an objection that would have been futile.  *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

Second, under the prejudice required to overcome procedural default under *Frady*, this particular theory of ineffective assistance of counsel also fails.  456 U.S. at 170.  Specifically, to establish prejudice sufficient to overcome procedural default, Petitioner must show an error of constitutional magnitude.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984) ("Prejudice" is actual harm resulting from the alleged constitutional error or violation.).  Thus, an error of state law (if one existed) cannot prejudice Petitioner sufficient to overcome his procedural default; accordingly, this claim is not properly before this Court.

### 2. Lack of Defense Expert

Second, Petitioner claims his counsel was ineffective for not calling his own expert on child sex abuse.  As Respondent points out, on cross examination defense counsel elicited

1    testimony from the state's expert that alleged victims sometimes make false accusations.

2    Doc. 31 at 18-19.  Thus, Respondent argues, and this Court agrees, that counsel offering his

3    own expert to give the same testimony as the state's expert would have been cumulative.  *See*

4    *U.S. v. Schaflander*, 743 F.2d 714, 718 (9th Cir. 1984) (holding that the failure of counsel to

5    present cumulative evidence is not ineffective assistance).

6            Further, strategically it may have been more powerful to obtain evidence of victims'

7    false allegations from the state's retained expert than defense's own retained expert.  In other

8    words, obtaining this concession from the state's expert might weigh more heavily with a

9    jury than if the defense used their own expert.  Given such a possible strategy, this Court,

10   "will not second-guess such decisions or use hindsight to reconstruct the circumstances of

11   counsel's challenged conduct."  *Mancuso v. Olivarez*, 292 F.3d 939, 954-55 (9th Cir. 2002);

12   *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984) ("tactical decisions by counsel with

13   which the defendant disagrees cannot form the basis of a claim of ineffective assistance of

14   counsel").  Thus, the Court finds counsel conduct was not below an objective standard of

15   reasonableness and was, therefore, not ineffective.

16                        **3.    Detective Means' Testimony**

17           Detective Means testified at trial.  Petitioner now argues that there were two portions

18   of Detective Means' report that were inconsistent with Detective Means' trial testimony;

19   thus, Petitioner concludes that counsel was ineffective for not impeaching Detective Means

20   with his report.

21           The first statement is whether the victim told Detective Means that Petitioner tried to

22   have sex with her or whether the victim told Detective Means that she told her mother that

23   Petitioner tried to have sex with her.  Detective Means testified that the victim told him that

24   Petitioner tried to have sex with her.  The report says, "she told me she said that he had tried

25   too [sic]."  Doc. 31 at 22.

26           Respondent argues that the "she said" in the report is nothing more than grammatical

27   error repeating "she told me."  This is a plausible explanation that would not have been

28   impeaching.  Also, it is possible the victim told Detective Means that she told her mother that

1    Petitioner tried to have sex with her, and she also repeated her accusation to Detective

2    Means, which is not inconsistent with his testimony or his report.

3        Given these possibilities, the Court finds counsel was not ineffective for not

4    impeaching Detective Means with a report that was not actually impeaching. *See Rupe*, 93

5    F.3d at 1445.  Further, the Court will not second guess counsel's strategic decision to not

6    dwell on and repeat to how many people and how many times the victim claimed Petitioner

7    attempted to have sex with her.  Given that the victim recanted at trial, continually recounting

8    all the times she said Petitioner did attempt to have sex with her might make her trial

9    testimony seem less reliable.  Thus, counsel made a reasonable strategic decision, which is

10   not ineffective assistance. *See Guam*, 741 F.2d at 1169.

11                          **4.    Video**

12       Prior to trial, Petitioner's counsel took a video deposition of the victim in which she

13   recanted.  Now Petitioner claims trial counsel was ineffective for not playing this video for

14   the jury.  Respondent argues that not playing the video was a reasonable strategic decision

15   with the bounds of *Strickland*.  For purposes of this discussion, the Court has assumed the

16   video would have been admissible; however, Petitioner has not explained under what theory

17   it would have been admissible.

18       First, Respondent argues the video was unnecessary because the victim recanted on

19   the stand at trial.  The Court agrees that failing to present what would have amounted to

20   cumulative evidence is not ineffective. *See Schaflander*, 743 F.2d at 718.

21       Second, the state's expert testified that recanting is frequently caused by family

22   pressure.  The fact that the victim went to Petitioner's counsel's office to make the recanting

23   video under the supervision of her family might have undermined the recantation.  Thus,

24   counsel made a reasonable strategic decision to not admit the video. *See Guam*, 741 F.2d at

25   1169.

26       Third, once counsel took this video in his office, the state successfully moved to have

27   a guardian ad litem appointed for the victim because her mother made her make the video.

28   The guardian ad litem found that the victim's mother was very cooperative with the defense

1   and bitter regarding the prosecution.  Doc. 31 at 26.  Thus, counsel avoided the possibility

2   of the guardian ad litem's appointment and findings being admissible to refute the video,

3   which could have again caused the jury to not believe the recantation in the video.  Again,

4   this Court will not second guess counsel's strategic decision.  *See Guam*, 741 F.2d at 1169.

5   Accordingly, alternatively, the Court finds counsel was not ineffective on this theory.

6                    **5.    Failure to Call Linda Flores**

7        Fifth, Petitioner claims his counsel was ineffective for failing to interview or call

8   Linda Flores.  Doc. 30 at 24.  Petitioner claims that Ms. Flores could have testified that a man

9   ran around the victim's neighborhood naked, which could have explained how the victim

10  knew what a penis looked like.  *Id.*  However, Respondent points out that the victim testified

11  that she knew what a penis looked like from changing babies' diapers, walking in on her

12  mother having sex, and from seeing a diagram in sex education class.  Doc. 31 at 31.

13       Trial counsel is not required to interview every possible witness to be effective.  *See*

14  *generally Bobby v. Van Hook*, 130 S.Ct. 13, 16-19 (2009).  More specifically,

15       "Counsel has a duty to make reasonable investigations or to make a reasonable
         decision that makes particular investigations unnecessary."  *Strickland*, 466
16       U.S. at 691.  We evaluate the scope of the duty to investigate in light of the
         context of trial.  "In any ineffectiveness case, a particular decision not to
17       investigate must be directly assessed for reasonableness in all the
         circumstances, applying a heavy measure of deference to counsel's
18       judgments."  *Id.*

19  *Hovey v. Ayers,* 458 F.3d 892, 909 (9th Cir. 2006).

20       Here, given the victim's testimony, counsel's failure to identify and call a witness to

21  offer a fourth explanation was not inadequate investigation nor ineffective assistance of

22  counsel.

23       Also, Petitioner claims Ms. Flores would have testified that it would not have been

24  in Petitioner's nature to have sex with his stepdaughter.  The Court agrees with Respondent

25  that Ms. Flores's opinion that Petitioner was not guilty was likely inadmissible.  Therefore,

26  even if counsel should have investigated more and discovered Ms. Flores, counsel was not

27  ineffective for not offering inadmissible evidence.  *See Rupe*, 93 F.3d at 1445.

28

### 6.   Failure to Call LuAnn Amos White

Next, Petitioner argues his counsel was ineffective for failing to call LuAnn Amos White.  In this case, the facts as presented at trial were that Petitioner sexually assaulted the victim twice.  Then the victim called her mother.  Ms. White would have testified that she spoke to the victim on the phone "a few minutes" before the victim called her mother.  Doc. 35 at 13.  Petitioner argues this phone conversation would show that the assaults did not really occur.

First, as discussed above, counsel is not ineffective for failing to identify and call every witness. *Hovey*, 458 F.3d at 909.  Second, the Court agrees with Respondent that even if the victim talked to Ms. White "a few minutes" before she called her mother, "a few minutes" could be before either of the assaults occurred.  Thus, the fact of the call would not discredit the victim's original story; and counsel was not ineffective in failing to admit this arguably irrelevant evidence.  Third, Respondent states that Ms. White's story is not supported by the phone records.  Doc. 31 at 27.  Counsel was not ineffective for making a strategic decision to not call a witness whose version of the facts was discredited by other evidence. *See Guam*, 741 F.2d at 1169.

### 7.   Failure to Call Patty Ollerton de Arguelles

Petitioner argues that his counsel was ineffective for failing to call Patty Ollerton de Arguelles as a witness.  Petitioner argues she would have testified that she allowed Petitioner to live in her home and care for her minor children.

In 2008, the Arizona Court of Appeals decided that evidence of a defendant's reputation for sexual morality or character evidence of sexual normalcy was admissible. *State v. Rhodes*, 200 P.3d 973, 976 ¶¶ 11-12 (Ariz. App. 2008).  However, at the time of Petitioner's trial in 2001, it was not established under state law that this would have been admissible.

> "*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004) (holding attorney was not required to accurately predict how courts would resolve question regarding sufficiency of evidence for conviction). Thus, a court reviewing an ineffective assistance of counsel

claim cannot require that an attorney anticipate a decision in a later case. *Lowiv. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (petitioner's criminal attorney not ineffective for failing to anticipate court ruling in the petitioner's subsequent civil action).

*Losh v. Hill*, 2009 WL 1089478, *6 (D. Or. 2009).

Here, because it was not clear under the law of Arizona at the time of Petitioner's trial that Ms. Ollerton de Arguelles' testimony would have been admissible, counsel was not ineffective for failing to anticipate a ruling that would come seven years later. Further, as discussed above, counsel is not ineffective for failing to uncover every possible witness. *Hovey*, 458 F.3d at 909. Thus, counsel was not ineffective for this alternative reason.

Finally, Respondent argues that if counsel had chosen to offer testimony of Petitioner's character, other character evidence would also have been relevant. Doc. 31 at 33. For example, the state may have been able to admit that Petitioner had previously been arrested for possessing cocaine. *Id*. Additionally, the state may have been able to admit testimony from the victim's mother that Petitioner was drunk on the morning in question, which may have caused him to deviate from his "normal" behavior. *Id*. Again, the Court cannot find counsel ineffective for his strategic decisions. *See Guam*, 741 F.2d at 1169. Thus, counsel was not ineffective for not calling Ms. Ollerton de Arguelles to give character testimony.

### 8.    State's DNA evidence

The evidence at trial was that the victim's nightgown had two semen stains on it. Doc. 31 at 11. One stain was on the outside hem of the nightgown. *Id*. The second stain was on the inside of the nightgown and soaked through to the outside. *Id*. The second stain was in the middle of the back of the nightgown. *Id*. Both semen stains matched Petitioner's DNA *Id*. at 12.

Petitioner claims his counsel was ineffective for not providing an explanation of the DNA evidence. However, counsel did elicit testimony of several exculpatory ways the semen may have been on the nightgown, including: 1) the state's expert testified the semen could be on the nightgown after it was washed; 2) the state's expert testified that the semen

1   has the lowest rating and that it could have been diluted by a water based substance; 3) the

2   state's expert testified that the semen could have been transferred to the nightgown from

3   another wet fabric; 4) the victim's mother testified she may have worn the nightgown; 5) the

4   victim's mother testified that she would sometimes masturbate Petitioner to ejaculation and

5   that the sheet on the victim's bed came from her bed; 6) the victim testified she might have

6   gotten the nightgown from the dirty clothes; and 7) the victim testified she sometime watched

7   TV in her mom's bed. Doc. 31 at 28-29.

8       Petitioner makes two specific complaints as to why all of the testimony elicited above

9   was inadequate to refute the DNA evidence. First, counsel did not play the video of the

10  victim's interview in his office. In the video the victim stated she obtained the nightgown

11  from the dirty clothes. Doc. 31 at 28. In her trial testimony the victim stated that she might

12  have obtained the nightgown from the dirty clothes. *Id*. Second, counsel failed to interview

13  Petitioner in such a way that Petitioner told him that he masturbated into the dirty clothes.

14      Beginning with the video, the Court has discussed above the reasons for counsel's

15  strategic decision to not offer the video into evidence (again assuming the video was even

16  admissible). Further, the victim's video testimony and trial testimony are so similar, that the

17  Court finds the video would have been cumulative. For both of these reasons, the Court finds

18  counsel was not ineffective for failing to offer the video into evidence. *See Guam*, 741 F.2d

19  at 1169; *Schaflander*, 743 F.2d at 718.

20      With regard to the masturbation argument, Petitioner now claims that he masturbated

21  into the dirty clothes on occasion. Doc. 30 at 23. However, Petitioner admits that he told his

22  trial counsel that he did not engage is such conduct. *Id*. Now, Petitioner argues that trial

23  counsel was ineffective for asking Petitioner this question while he wife was present because

24  he was too embarrassed to tell the truth. *Id*.

25      First, counsel was not ineffective for not presenting to the jury a theory that his client

26  specifically denied at the time. *See Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1996)

27  (holding that counsel was not ineffective for failing to discover facts that his client knew, but

28  did not tell him) (citing *Dooley v. Petsock*, 816 F.2d 885, 890-91 (3rd Cir. 1987) (holding

1   that trial counsel was not ineffective for "failing to raise claims as to which his client had not
2   supplied the essential facts of which the client was aware."). Second, the Court cannot see
3   how counsel interviewing Petitioner outside the presence of his wife would have caused a
4   different result because if Petitioner was too embarrassed to admit this in front of his wife,
5   he was likely too embarrassed to admit this to his counsel, or in front of an entire courtroom.
6   Accordingly, counsel was not ineffective for failing to present an argument of which he was
7   unaware.

8                   **9.    Cumulative Errors and Prejudice**

9           As discussed above, *Strickland* requires Petitioner to show both that his counsel's
10  actions fell below an objective standard of reasonableness and that Petitioner was prejudiced
11  by these errors. Prejudice requires a showing that but for counsel's errors the result of the
12  proceeding would have been different. *Strickland*, 466 U.S. at 694. The Court has already
13  concluded that counsel did not commit any errors. Accordingly, the Court need not reach
14  the prejudice inquiry of *Strickland*. Nonetheless, the Court will alternatively consider
15  whether, assuming arguendo counsel had committed an error, Petitioner has shown prejudice.

16          In his reply, Petitioner objects to Respondent treating each prejudice inquiry
17  separately, rather than cumulatively. Doc. 35 at 15. It is true that if counsel's performance
18  is deficient in multiple ways, the multiple deficiencies can cumulatively equate to prejudice.
19  *Harris by and through Ramseyer v. Wood*, 64 F.3d 1435, 1438 (9th Cir. 1995). But it is
20  impossible to determine if the result of the proceeding would have been different without
21  considering how each alleged error affected the proceeding. Moreover, Petitioner does not
22  explain how the cumulative effect of the alleged errors would have overcome the weight of
23  the evidence against Petitioner.

24          Specifically, there was significant evidence of Petitioner's guilt that would all have
25  been admitted even if trial counsel had done the additional things which are now being
26  argued were required to be effective. For example, there was the victim's initial allegations
27  to both her mother and the police. Additionally, there was the DNA evidence of Petitioner's
28  semen on the victim's nightgown. The jury weighed this evidence. This Court cannot

1    conclude that even if trial counsel had done all of the additional items suggested by Petitioner

2    now, the result of the proceeding would have been different.

3              Taking for example the masturbation story, this Court does not agree that had trial

4    counsel argued to the jury that Petitioner went around the home masturbating onto the dirty

5    clothes, including the clothes of his eleven-year-old stepdaughter, this fact would have

6    convinced the jury that he did not engage in a sex act with his stepdaughter. Further, the jury

7    may not have given credence to this story given the coincidence they would have had to

8    believe that when Petitioner masturbated onto the dirty clothes, his semen landed on the exact

9    nightgown the victim claimed to be wearing at the time of the attack. Taking all of counsel's

10   alleged errors together, each of which has similar pitfalls, the Court is not persuaded that the

11   result of the proceeding would have been different without the alleged errors.

12             Thus, the Court finds that even if there had been attorney error, given the significant

13   evidence against Petitioner, the additional strategies Petitioner now claims were necessary

14   would not have made a difference in the proceeding. Therefore, Petitioner has failed to show

15   prejudice.

16   **IV.    Framework Outlined by the Supreme Court - Part 2**

17             Because this Court has denied the ineffective-assistance-of-trial-counsel claim on the

18   merits, this Court can reach a final decision regardless of any exhaustion inquiry. 28 U.S.C.

19   § 2254(b)(2). Nonetheless, applying the Supreme Court's framework from *Martinez*, and

20   having now determined on the merits that trial counsel was not ineffective, the Court

21   concludes that First PCR counsel was also not ineffective as a result of her failure to raise

22   an ineffective-assistance-of-trial-counsel claim. First PCR counsel was not ineffective

23   because the claim was meritless, and counsel is not ineffective for failing to make an

24   argument that would have been futile. *Rupe*, 93 F.3d at 1445. Because First PCR counsel

25   was not ineffective, Petitioner cannot show cause to overcome his procedural default of this

26   claim in state court. Additionally, for the factual reasons discussed above, Petitioner also has

27   not shown prejudice — that trial counsel's errors worked to his substantial disadvantage and

28   infected the trial with errors of constitutional dimension. *See United States v. Frady*, 456

1    U.S. at 170.  Therefore, Petitioner fails to meet the *Martinez* exception that would allow this

2    Court to consider the ineffective-assistance-of-trial-counsel claim de novo.

3    **V.    Certificate of Appealability**

4            "The district court must issue or deny a certificate of appealability when it enters a

5    final order adverse to the applicant."  Rule 11(a), Rules Governing Section 2254.  A judge

6    may issue a certificate of appealability  "only if the applicant has made a substantial showing

7    of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).[6]

8            "Where a district court has rejected the constitutional claims on the merits, the

9    showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate

10   that reasonable jurists would find the district court's assessment of the constitutional claims

11   debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "When the district

12   court denies a habeas petition on procedural grounds without reaching the prisoner's

13   underlying constitutional claim, a COA should issue when the prisoner shows, at least, that

14   jurists of reason would find it debatable whether the petition states a valid claim of the denial

15   of a constitutional right and that jurists of reason would find it debatable whether the district

16   court was correct in its procedural ruling."  *Id.* at 484.

17           Here, turning to the merits of the ineffective-assistance-of-trial-counsel claim, the

18   Court finds that reasonable jurists would not find this Court's assessment of that claim wrong

19   or even debatable.  Further and alternatively, because the constitutional claim fails, jurists

20   of reason would not find this Court's procedural ruling that Petitioner fails to qualify for the

21

22

23

24

25

26

27           [6]  Because this is the same test the *Martinez* court used for determining whether the
     ineffective assistance claim was substantial, this section also governs the second inquiry

28   under *Martinez*.

1    *Martinez* exception to procedural default debatable.[7]   Accordingly, the certificate of
2    appealability will be denied.

3    **VI.    Conclusion**

4           Based on the foregoing,

5           **IT IS ORDERED** that the Petition for Writ of Habeas Corpus is denied, with
6    prejudice, and the Clerk of the Court shall enter judgment accordingly.

7           **IT IS FURTHER ORDERED** that, in the event Petitioner files an appeal, a
8    certificate of appealability is denied.

9           DATED this 27th day of November, 2012.

10

11

12                                            _____
                                                     James A. Teilborg
13                                              United States District Judge

14

15

16

17

18

19

20

21

22

23   _____

24         [7] The Court finds that the Court's procedural decision that the state court's decision
     was a last-reasoned decision entitled to deference is debatable.  However, the second prong
25   of the COA inquiry on a procedural ruling is whether Petitioner states a valid claim of the
     denial of a constitutional right.  For the reasons discussed above, the Court finds Petitioner
26   has not stated a valid claim of the denial of a constitutional right because this Court's
     decision on both Petitioner's ineffective-assistance-of-trial-counsel claim and ineffective-
27   assistance-of-First-PCR-counsel claim is not debatable.   Accordingly, Petitioner is not
28   entitled to a COA on this issue.